AUG 16 2022 PM 4:49
FILED-USDC-CT-NEW HAVEN

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Grand Jury N-21-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:22CR 171 (SVN) MEG |
| v. | VIOLATIONS: |
| ALEXANDER KOLITSAS,<br>BRYANT BERMUDEZ,<br>ROBERTO ALICEA, a.k.a. "Bebe with the Shrimp,"<br>FRANCISCO AYALA, and<br>THEODORE ROOSEVELT OWENS | 18 U.S.C. § 371<br>(Conspiracy)<br><br>18 U.S.C. § 2314<br>(Transportation of Stolen Property)<br><br>18 U.S.C. § 1956(a)(1)(A)(i)<br>(Promotional Money Laundering)<br><br>18 U.S.C. § 1957<br>(Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity)<br><br>18 U.S.C. §§ 922(g)(3) and 924(a)(2)<br>(Possession of Firearms by an Unlawful Drug User or Addict) |

INDICTMENT

The Grand Jury charges:

COUNT ONE
(Conspiracy to Transport Stolen Property)

At all times relevant to the Indictment:

The Defendants and Co-Conspirators

1.   Defendant ALEXANDER KOLITSAS resided in Wolcott, Connecticut. KOLITSAS owned and operated Downpipe Depot & Recycling LLC ("Downpipe Depot") located at 18 Tyrell Drive, Wolcott, Connecticut and 191 Park Avenue, East Hartford, Connecticut.

2.   Defendant BRYANT BERMUDEZ resided in East Hartford, Connecticut. BERMUDEZ started working with KOLITSAS at Downpipe Depot in approximately November 2021.

3. Defendant ROBERTO ALICEA, a.k.a. "Bebe with the Shrimp," resided in New Britain, Connecticut.

4. Defendant FRANCISCO AYALA resided in Ansonia, Connecticut.

5. Defendant THEODORE ROOSEVELT OWENS resided in Hartford, Connecticut.

Background on Catalytic Converters

6. Catalytic converters are an essential part of motor vehicles that are designed to reduce harmful pollutants and toxic gasses produced by a vehicle's emissions system. To do this, a catalytic converter converts engine-exhaust pollutants into carbon dioxide and water vapor by a catalyzing chemical reaction. The catalyst for the reaction typically is a precious metal, such as platinum, palladium, or rhodium that can be extracted from the converter. The current market values for these precious metals are especially high, making their resale particularly profitable.

7. Catalytic converters have become a desirable mark for thieves because of their value, the ease in which they can be cut or removed from a vehicle, and the difficulty in tracing a stolen converter to its originating vehicle. The average scrap price for catalytic converters currently varies between $300 and $1,500, depending on the model and type of precious metal component.

8. Before July 1, 2022, Connecticut law required that "[a]ny person desiring to engage in business as a dealer in junk, metals or other secondhand articles . . . shall make application . . . for a license to transact such business within the limits of such town . . . ." Conn. Gen. Stat. § 21-11 (2021). Once a license was issued, the secondhand dealer further was required to "keep a book in which shall be written in English a description of such articles and the name and residence and a general description of the person from whom, and the time and hour when, such property was received . . . [and] shall make, weekly, sworn statements of all his or her transactions under such license, describing the goods received and setting forth the name and residence and a description

of the person from whom such goods were received, to the chief of police in the case of cities or boroughs and, in other cases, to the town clerk of the town in which such junk dealer resides." Conn. Gen. Stat. § 21-11 (2021).

### The Conspiracy

9. Beginning in or about January 2021 and continuing until on or about June 1, 2022, the precise dates being unknown to the Grand Jury, in the District of Connecticut and elsewhere, the defendants KOLITSAS, BERMUDEZ, ALICEA, AYALA, and OWENS did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to commit an offense against the United States, that is, to transport, transmit, and transfer in interstate commerce any stolen goods, wares, and merchandise, to wit, catalytic converters, having a value of $5,000 or more, knowing the same to have been stolen, converted, or taken by fraud, in violation of Title 18, United States Code, Section 2314.

10. The purpose of the conspiracy was for KOLITSAS, BERMUDEZ, ALICEA, AYALA, OWENS, and their co-conspirators, to enrich themselves by acquiring catalytic converters they knew to be stolen and having those converters transported from Connecticut to New York and New Jersey to be sold for profit.

### Manner and Means of the Conspiracy

11. The manner and means by which KOLITSAS, BERMUDEZ, ALICEA, AYALA, and OWENS sought to accomplish and did accomplish the objects of the conspiracy included, among others, the following:

12. It was part of the conspiracy that KOLITSAS owned and, along with BERMUDEZ, operated Downpipe Depot. Specifically, KOLITSAS was responsible for the daily management

and oversight of Downpipe Depot. Starting in approximately November 2021, BERMUDEZ shared in those responsibilities with KOLITSAS.

*Purchase of Stolen Catalytic Converters in Connecticut*

13. It was part of the conspiracy that while operating Downpipe Depot, KOLITSAS and BERMUDEZ knowingly obtained and purchased stolen catalytic converters from a network of suppliers, including ALICEA, AYALA, OWENS, and others known and unknown to the Grand Jury, who would and did steal catalytic converters from vehicles that did not belong to them.

14. It was further part of the conspiracy that KOLITSAS and BERMUDEZ instructed suppliers on the types of catalytic converters that would obtain the most profit upon resale.

15. It was further part of the conspiracy that the suppliers, including ALICEA, AYALA, OWENS, and others known and unknown to the Grand Jury, would and did arrange to deliver the stolen catalytic converters to KOLITSAS and BERMUDEZ. The delivery locations included but were not limited to KOLITSAS's residence in Wolcott, Connecticut; Maples Restaurant at 725 Straits Turnpike, Middlebury, Connecticut; and Downpipe Depot's warehouse at 191 Park Avenue, East Hartford, Connecticut.

16. It was further part of the conspiracy that KOLITSAS and BERMUDEZ would and did purchase stolen catalytic converters from their suppliers with cash or, when cash was unavailable, through mobile payment services such as Zelle and CashApp.

17. It was further part of the conspiracy that KOLITSAS and BERMUDEZ would acquire and maintain firearms at various locations, including at KOLITSAS's residence in Wolcott, Connecticut and at Downpipe Depot's warehouse in East Hartford, Connecticut, for, among other things, protection of their inventory and cash proceeds.

*Transportation and Resale of Stolen Catalytic Converters*

18. It was part of the conspiracy that once KOLITSAS and BERMUDEZ purchased stolen catalytic converters from suppliers in Connecticut, KOLITSAS and BERMUDEZ would contact representatives at recycling businesses located in New York and New Jersey, including a representative identified herein by the initials A.P., who is known to the Grand Jury, to arrange for the delivery and sale of the stolen catalytic converters to those businesses.

19. It was further part of the conspiracy that KOLITSAS and BERMUDEZ would transport and sell stolen catalytic converters, which were valued in the aggregate at $5,000 or more, that they obtained from various Connecticut suppliers, to include ALICEA, AYALA, and OWENS, to recycling centers in New York and New Jersey. KOLITSAS and BERMUDEZ primarily sold catalytic converters to the recycling centers for cash, but also accepted payments deposited through wire transfers or by check into Downpipe Depot's business bank account.

20. It was further part of the conspiracy that KOLITSAS and BERMUDEZ would utilize payments received from these recycling businesses to purchase additional stolen catalytic converters from AYALA, ALICEA, OWENS, and others known and unknown to the Grand Jury. KOLITSAS also utilized proceeds from the sale of stolen catalytic converters to pay BERMUDEZ's salary and other expenses associated with the operation of Downpipe Depot, and to purchase items for his own personal use, such as automobiles and an entertainment center.

*Efforts to Avoid Detection*

21. It was part of the conspiracy that KOLITSAS and BERMUDEZ would and did utilize invoicing systems and electronic business ledgers to maintain the appearance of legitimacy, while permitting suppliers of stolen catalytic converters to circumvent the invoicing process by using suppliers' aliases and by permitting suppliers to utilize the identification of individuals not involved in the recorded transaction.

22.     It was further part of the conspiracy that KOLITSAS and BERMUDEZ would meet with suppliers outside of business hours and at locations hidden from public view to conceal the true nature and the source of the stolen catalytic converters.

23.     It was further part of the conspiracy that in operating Downpipe Depot, KOLITSAS and BERMUDEZ regularly used cash when paying suppliers for stolen catalytic converters and then sold those stolen catalytic converters to disguise and obscure both the source and the destination of the stolen catalytic converters.

24.     It was further part of the conspiracy that in or about February 2022, KOLITSAS applied for a secondhand dealer permit with the Town of East Hartford to create the appearance of legitimacy, even though Downpipe Depot already had been operating as a secondhand dealer of catalytic converters for approximately one year. KOLITSAS also continued to engage in the purchase and resale of catalytic converters, including converters that had been stolen, following the denial of his application for a secondhand dealer permit in or about March 2022.

Overt Acts

25.     In furtherance of the conspiracy and to effect its objects, KOLITSAS, BERMUDEZ, ALICEA, AYALA, OWENS, and their co-conspirators, both known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, in the District of Connecticut and elsewhere:

(a) On or about October 1, 2021, OWENS texted KOLITSAS asking for the types of catalytic converters that OWENS "should look out for," to which KOLITSAS responded "Overall the safest bet would be Honda and Acuras."

(b) On or about October 3, 2021, OWENS texted KOLITSAS an image of nine catalytic converters of different sizes sitting on a concrete floor, which OWENS represents as coming from Honda and Acura vehicles.

(c) On or about October 4, 2021, OWENS traveled to 725 Straits Turnpike, Middlebury, Connecticut for the purpose of selling stolen catalytic converters to KOLITSAS in exchange for approximately $10,500.

(d) On or about October 13, 2021, OWENS texted KOLITSAS for the purpose of setting up a meeting to sell stolen catalytic converters to KOLITSAS the following day, stating "I can go out to night and bring a 10k load tomorrow morning."

(e) On or about October 14, 2021, KOLITSAS transported catalytic converters, including converters that had been stolen, to Freehold, New Jersey and sold them for approximately $237,329 via wire transfer into Downpipe Depot's J.P. Morgan Chase business checking account ending in 1569.

(f) On or about March 10, 2022, at approximately 3:14 a.m., AYALA texted KOLITSAS a series of messages, which read: "Alex can I see you tm in the morning at the restaurant," "Or your house or can I see u tonight," "Cause that ride I can't gotta be safe."

(g) On or about March 10, 2022, AYALA traveled to 191 Park Avenue, East Hartford, Connecticut and sold to BERMUDEZ four catalytic converters, including two catalytic converters that had been stolen by AYALA from vehicles in Stratford, Connecticut, on or about March 9, 2022, in exchange for approximately $4,050 in cash.

(h) On or about March 10, 2022, KOLITSAS transported catalytic converters, including converters that had been stolen, to Island Park, New York for resale to A.P., in exchange for approximately $148,300 in cash.

(i) On or about March 13, 2022, ALICEA texted BERMUDEZ to meet the following day, stating that he would have "20k" worth of converters to sell.

(j) On or about March 14, 2022, ALICEA traveled to 191 Park Avenue, East Hartford, Connecticut and sold to BERMUDEZ numerous catalytic converters, including converters that had been stolen, in exchange for approximately $23,645 in cash.

(k) On or about March 17, 2022, ALICEA texted KOLITSAS for the purpose of setting up a meeting to sell to KOLITSAS and BERMUDEZ additional stolen catalytic converters, which read: "Right now not much 10k by morning more."

(l) On or about March 18, 2022, ALICEA traveled to 191 Park Avenue, East Hartford, Connecticut and sold to BERMUDEZ numerous catalytic converters, including converters that had been stolen, in exchange for approximately $19,660 in cash.

(m) On or about March 18, 2022, KOLITSAS transported catalytic converters, including converters that had been stolen, to Island Park, New York for resale to A.P., in exchange for approximately $150,000 in cash.

COUNTS TWO THROUGH FIVE
(Interstate Transportation of Stolen Property)

26. Paragraphs 1 through 25 of this Indictment are incorporated by reference.

27. On or about the dates set forth below, the defendants listed below did unlawfully transport, transmit, and transfer in interstate commerce, and aided and abetted each other and others to do the same, stolen goods, wares, and merchandise, that is, stolen catalytic converters, of the aggregate value of $5,000 or more, from the State of Connecticut to the States of New York and New Jersey, knowing the same to have been stolen, converted, and taken by fraud, the aggregate transactions on each date constituting a separate count of this Indictment:

| Count | Date | Defendants |
|---|---|---|
| 2 | October 14, 2021 | KOLITSAS, OWENS |
| 3 | January 4, 2022 | KOLITSAS, BERMUDEZ |
| 4 | March 18, 2022 | KOLITSAS, BERMUDEZ, ALICEA |
| 5 | April 11, 2022 | KOLITSAS, BERMUDEZ, ALICEA, AYALA |

All in violation of Title 18, United States Code, Sections 2314 and 2.

## COUNT SIX
(Promotional Money Laundering)

28. Paragraphs 1 through 25 of this Indictment are incorporated by reference.

29. On or about March 22, 2022, in the District of Connecticut and elsewhere, the defendant ALEXANDER KOLITSAS did knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce, to wit: the payment of $13,300 to Blasius Kia in Watertown, Connecticut towards the purchase of a 2020 Ford Transit Van, bearing VIN 1FTBR2C83LKA04385, which involved the proceeds of specified unlawful activity, that is, the interstate transportation of stolen catalytic converters from Connecticut to New York and New Jersey, with the intent to promote the carrying on of the specified unlawful activity, and that while conducting and attempting to conduct the financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity.

In violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

## COUNTS SEVEN AND EIGHT
(Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity)

30. Paragraphs 1 through 25 of this Indictment are incorporated by reference.

31. On or about the dates set forth below, in the District of Connecticut and elsewhere, the defendant ALEXANDER KOLITSAS did knowingly engage and attempt to engage in monetary transactions, by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property that was of a value greater than $10,000, with knowledge that the monetary transactions involved criminally derived property, and in fact such property having been derived from specified unlawful activity, that is, the interstate transportation of stolen catalytic converters, as follows:

| Count | Date | Monetary Transaction |
|---|---|---|
| 7 | 11/26/21 | Cashier's check #1196118396 drawn from Downpipe Depot's J.P. Morgan Chase business checking account ending in 1569 in the amount of $24,845.49 payable to Mercedes Benz of Fort Pierce, Florida |
| 8 | 1/18/22 | Check withdrawal in the amount of $12,270.00 from Downpipe Depot's J.P. Morgan Chase business checking account ending in 1569 for payment to Hometronics Life |

All in violation of Title 18, United States Code, Section 1957.

## COUNT NINE
(Possession of Firearms by an Unlawful Drug User or Addict)

32. On or about June 1, 2022 in the District of Connecticut, the defendant ALEXANDER KOLITSAS, then being, and knowing that he was, an unlawful user of, and addicted to, a controlled substance as defined in Title 21, United States Code, Section 802, did knowingly possess firearms in and affecting commerce, namely, a) one Glock, Model 43X, 9 mm semi-automatic pistol, bearing serial number AFLE679, b) one HS Produkt, Model Hellcat, 9 mm semi-automatic pistol, bearing serial number BA156915, c) one CZ Scorpion EVO 3-S1 9 mm

rifle, bearing serial number EO45195, d) one Palmetto State Armory rifle, bearing serial number KSG2015442, and e) one IWI, Model Uzi Pro 9 x 19 mm caliber pistol, bearing serial number U2002260, all of which had been shipped and transported in interstate or foreign commerce.

In violation of Title 18, United States Code, Sections 922(g)(3) and 924(a)(2).

<u>FORFEITURE ALLEGATION</u>
(Conspiracy to Transport and Transportation of Stolen Property)

33. Upon conviction of one or more of the counts alleged in Counts One through Five of this Indictment, defendants ALEXANDER KOLITSAS, BRYANT BERMUDEZ, ROBERTO ALICEA, a.k.a. "Bebe with the Shrimp," FRANCISCO AYALA, and THEODORE ROOSEVELT OWENS shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 371 and 2314, including but not limited to the following:

Currency:

(a) Approximately $20,100 in United States currency seized on or about June 1, 2022 from the possession of BRYANT BERMUDEZ;

(b) Approximately $8,020 in United States currency seized on or about June 1, 2022 from Downpipe Depot & Recycling LLC, 191 Park Avenue, East Hartford, Connecticut; and

(c) Approximately $47,007 in United States currency seized on or about June 1, 2022 from a 2018 Chevrolet Silverado K150 LT truck (bearing VIN 1GCVKREC0JZ116271) being operated by ALEXANDER KOLITSAS in Middlebury, Connecticut.

Vehicles:

(d) 2020 Ford Transit Van, bearing VIN 1FTBR2C83LKA04385, seized on or about June 1, 2022 from Downpipe Depot & Recycling LLC, 191 Park Avenue, East Hartford, Connecticut;

(e) 2018 Chevrolet Silverado K150 LT truck, bearing VIN 1GCVKREC0JZ116271, seized on or about June 1, 2022 in the vicinity of 373 Leonard Road in Middlebury, Connecticut; and

(f) 2016 Polaris Slingshot SL, bearing VIN 57XAAPFA3G7117901.

Financial Accounts:

(g) An interest in the amount of $91,581.76 in TD Bank account ending in 4291 held in the name of Downpipe Depot & Recycling LLC.

34. If any of the above-described forfeitable property, as a result of any act or omission of the defendants, cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

FORFEITURE ALLEGATION
(Money Laundering Offenses)

35. Upon conviction of one or more of the money laundering offenses alleged in Counts Six through Eight of this Indictment, the defendant ALEXANDER KOLITSAS shall forfeit to the United States of America pursuant to 18 U.S.C. § 982(a)(1), all right, title, and interest in any and all money and other property involved in each offense in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1957, and all property traceable to such property, and a sum of money equal to the total amount of money involved in each offense, or conspiracy to commit such offense, for which the defendant is convicted.

36. If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s), cannot be located upon the exercise of due diligence, has been transferred, sold to, or deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant(s) up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 982(a)(1) and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

## FORFEITURE ALLEGATION
(Firearms Offense)

37. Upon conviction of the firearms offense alleged in Count Nine of this Indictment, the defendant ALEXANDER KOLITSAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d) and Title 28, United States Code, Section 2461(c), all firearms and ammunition involved in the commission of the offense, including but not limited to the following: one Glock, Model 43X, 9 mm semi-automatic pistol, bearing serial number AFLE679; one HS Produkt, Model Hellcat, 9 mm semi-automatic pistol, bearing serial number BA156915; one CZ Scorpion EVO 3-S1 9 mm rifle, bearing serial number EO45195; one Palmetto State Armory rifle, bearing serial number KSG2015442; one IWI, Model Uzi Pro 9 x 19 mm caliber pistol, bearing serial number U2002260; and all associated ammunition.

All in accordance with Title 18, United States Code, Section 924(d); Title 21, United States Code, Section 853; Title 28, United States Code, Section 2461(c); and Rule 32.2(a) of the Federal Rules of Criminal Procedure.

A TRUE BILL

/s/

FOREPERSON

UNITED STATES OF AMERICA

_____
VANESSA ROBERTS AVERY
UNITED STATES ATTORNEY

_____
LAUREN C. CLARK
ASSISTANT UNITED STATES ATTORNEY

_____
REED DURHAM
ASSISTANT UNITED STATES ATTORNEY